# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CORRIN DANDRIDGE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2118-B |
| | § | |
| PRINCIPAL MANAGEMENT | § | |
| GROUP OF NORTH TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Principal Management Group of North Texas ("PMG")'s

Motion for Summary Judgment (Doc. 29), which seeks summary judgment on all claims asserted by

Plaintiff Corrin Dandridge ("Dandridge"). For the reasons set forth below, the Court **GRANTS IN**

**PART** and **DENIES IN PART** the motion. Specifically, the Court grants summary judgment in

favor of PMG on all claims except Dandridge's failure-to-accommodate claims that allege PMG's

failure to make its office doors handicap accessible.

## I.

## BACKGROUND[1]

A.    *Factual Background*

This is a disability-related employment dispute. Dandridge began working for PMG in 2002.

---

[1] The Court draws its factual account from the summary-judgment record. For the sake of brevity, the Court summarizes only those factual allegations raised by the parties' briefing and pertinent to the Court's analysis. Though Dandridge alleges additional facts in her operative complaint, she has not provided any summary-judgment evidence to substantiate these allegations or otherwise relied upon these allegations in her response.

Doc. 31-1, Def.'s App., 8. PMG is a property-management company that services homeowners associations ("HOAs"). Doc. 31-20, Def.'s App., 213. When Dandridge began working at PMG, she was a Community Manager, meaning she managed and supervised a portfolio of HOAs; acted as a liaison between each HOA's board and members; attended board meetings and events; inspected the buildings and common areas of each HOA; managed vendors; and performed a variety of administrative tasks. Doc. 31-1, Def.'s App. 8–10. Later, Dandridge was promoted to Senior Community Manager. *Id.* at 11. As a Senior Community Manager, she retained her Community Manager responsibilities, but with a smaller portfolio of HOAs so that she could also supervise Community Managers. *Id.* at 15–16; Doc. 31-20, Def.'s App., 214–15. After the promotion, however, PMG received complaints about Dandridge's supervision from those she supervised, so PMG reassigned those individuals to other Senior Community Managers and instead assigned Dandridge more HOAs to manage. Doc. 31-22, Def.'s App., 257. She nonetheless retained her title, salary, and benefits. *Id.*

During her employment with PMG (around 2010), Dandridge was diagnosed with lupus, an autoimmune disease causing inflammation that affects her joints. Doc. 31-1, Def.'s App., 21–22. During a lupus flare-up, Dandridge experiences flares of joint pain in her feet, ankles, hands, knees, hips, and elbows. *Id.* at 23. Around 2018, Dandridge began experiencing more painful flares, causing difficulty when she walked or stood. *Id.* at 23–24.

In early 2018, Dandridge was excused from work for six days based on a note from her medical provider; she does not recall why the doctor wrote the note—possibly due to a lupus flare. *Id.* at 41; Doc. 31-8, Def.'s App., 177. Around the same time, Dandridge began using a motorized chair when she experienced lupus flares. Doc. 31-1, Def.'s App., 23–24. She also asked her supervisor

if she could work from home when she had severe flares, and she alleges her supervisor declined the request. *Id.* at 27.

Dandridge then called PMG's "Safe Line," a line for employees to raise "serious concerns," and she explained that she was not permitted to work from home and that she struggled to navigate the office on her motorized chair. Doc. 31-21, Def.'s App., 224. After this call and a conversation with the Director of Human Resources, Shermetra Irving, Dandridge was permitted to work from home for six days, because Dandridge's medical note had indicated she should be restricted to "light duty" even after her return to the office. *Id.* at 224–25. During this conversation with Dandridge, Irving also explained how Dandridge could make any requests for accommodations. *Id.* at 225.

In accordance with Irving's instructions, *see* Doc. 32-1, Def.'s App., 298–99, Dandridge submitted a "Medical Provider Response for ADA Functional Limitations Form" from her medical provider. *Id.* at 302. On the form, Dandridge's provider indicated that she suffered from lupus and spondyloarthritis and that she experienced "arthritis flares" that can lead to "difficulty with walking and standing[.]" *Id.* The provider also noted that Dandridge "[h]as to use [a] motorized cart with flares[.]" *Id.* at 303. In terms of recommended accommodations, the provider stated, "working at home lessen[s] flare days, assistance with stairs when flaring[.]" *Id.*

Upon receipt of this documentation, Irving, Katie Rainwater (another Human Resources representative), and Dandridge's supervisor met to discuss potential accommodations. Doc. 31-21, Def.'s App., 226. The supervisor "confirmed there would be no issue with providing Dandridge assistance with climbing any stairs during lupus flares." *Id.* However, the supervisor "expressed concern" about Dandridge working from home, "because there were many job functions that could not be performed at home," such as visits, inspections, oversight of repairs, and meetings. *Id.* Further,

PMG did not permit other Community Managers or Senior Community Managers to work from home. *Id.* at 226–27. Accordingly, Dandridge's supervisor denied her request to work from home. *See id.*

At some point during Dandridge's discussions with Human Resources, Dandridge also requested that three of her assigned HOAs—Parkside Cedar Springs Condominium Association ("Parkside"), Coombs Bridge Owner's Association ("Coombs Bridge"), and Imperial House Condominium Association ("Imperial House")—be reassigned. *See* Doc. 31-22, Def.'s App., 258. Dandridge anticipated "accessibility issues" in navigating these properties "when she was on her mobility chair" due to the stairs and level changes at the properties. *Id.* Rainwater informed PMG's management that these three properties "were not accessible to [Dandridge's] needs" and would thus need to be reassigned. *Id.* By April 2018, PMG had reassigned Parkside, and by May 2018, it had reassigned Coombs Bridge, as well as the inspections at Imperial House. *See id.* at 259–60; Doc. 5, Am. Compl., ¶ 28; Doc. 31-1, Def.'s App., 54–55.

On May 2, 2018, Dandridge emailed Irving and PMG's Regional Vice President, Trung Pham, with an attached "formal written notice" of her issues with PMG. *See* Doc. 31-16, Def.'s App., 202, 204–05. In this notice, she outlined several issues, including her inability to work from home, the delay in reassigning the facilities discussed above, and the lack of "handicap accessibility" in the office. *Id.* at 205. Dandridge relayed several requests that she claimed she had already made, including that PMG "make the modification necessary to the office and bathroom doors for [her] to continue to do [her] job." *Id.* Subsequently, Irving met with Dandridge to discuss the issues raised in the notice. Doc. 31-21, Def.'s App., 227. Irving and Dandridge "discussed . . . that her request to work from home was denied," as well as the status of the property reassignments. *Id.* Irving states that

during this discussion, Dandridge "did not indicate that she had any new medical limitations or other accommodations she needed." *Id.*

Then, following a change in PMG leadership in August 2018, Dandridge requested to supervise a group of Community Managers again. *See* Doc. 31-20, Def.'s App., 216. PMG's President, Mark Southall, granted this request and assigned Dandridge four Community Managers to supervise. *Id.*

Toward the end of 2018, Dandridge requested that Southall raise her salary from $59,956.00 to at least $60,000.00. *Id.* at 218. Around the same time, Dandridge's direct reports began complaining to Human Resources about Dandridge's performance as a manager. Doc. 31-21, Def.'s App., 228. These complaints led to an investigation, which revealed that Dandridge's four supervisees were dissatisfied with Dandridge's failure to supervise and train them. *Id.* Additionally, some relayed unprofessional conduct by Dandridge; for example, one explained that Dandridge shared details of a sexual encounter with the direct report. *Id.* at 228–29. Given these findings, in February 2019, Human Resources recommended to Southall that Dandridge no longer supervise managers and instead focus on serving her assigned HOAs. *Id.* at 229. Southall agreed, and on February 6, 2019, Human Resources and Southall met with Dandridge to inform her she would no longer supervise Community Managers but that her pay, title, and benefits would not change. Doc. 31-20, Def.'s App., 217. Additionally, given "the performance issues with Dandridge," Southall denied her request for a raise. *Id.* at 218.

From March 4, 2019, to May 29, 2019, Dandridge took leave under the Family Medical Leave Act (FMLA). Doc. 31-21, Def.'s App., 230. When her leave was about to expire, Dandridge indicated she planned to return to work at PMG on June 11, 2019. *See id.* But she did not return on

June 11, nor did she provide PMG with a new date of return. *Id.* Rather, on October 19, 2020, she requested to return to PMG under specific conditions. *Id.* at 231. Irving responded to this request by informing Dandridge that her position was no longer available and that she could apply to an open position. *Id.* Dandridge did not respond. *Id.*

B.      *Procedural Background*

Dandridge filed a dual Charge of Discrimination against PMG with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC") on May 2, 2019. Doc. 31-17, Def.'s App., 206. In the charge, she states that she experienced discrimination from August 1, 2017, to March 5, 2019. *Id.* She alleges, among other details, that PMG denied her reasonable accommodations and discriminated and retaliated against her. *Id.* The same day that she filed her charge, she received her right to sue from the EEOC. Doc. 31-18, Def.'s App., 209; Doc. 31-1, Def.'s App., 61.

On July 17, 2019, Dandridge filed a petition against PMG in Texas state court. *See generally* Doc. 1-1, Ex. 2 (Pet.). A few days later, she amended her petition. *See generally* Doc. 1-1, Ex. 5 (Am. Pet.). Her amended petition, like the original, alleged claims of disability discrimination, failure to accommodate, and retaliation. Doc. 1-1, Ex. 2 (Pet.), 6–8. It referenced Texas Labor Code provisions, but it also alleged that PMG's actions were "in direct conflict with ADA regulations." *Id.* at 6.

PMG thereafter removed the action to this Court based on federal-question jurisdiction. Doc. 1, Notice of Removal, 1–2. In its notice of removal, PMG explained that because Dandridge alleged PMG's failure to provide accessible facilities, her amended petition presented a federal question. *Id.* at 2. Further, PMG noted that Dandridge "generally refer[red] to the 'ADA' throughout her Petition

regarding her disability discrimination, failure to accommodate, and retaliation claims[.]" *Id.* at 2 n.1. Thus, PMG stated that insofar as Dandridge brought these three claims under the ADA, removal was proper based on this Court's original jurisdiction. *Id.* (citing 28 U.S.C. § 1441(a)). After removal, Dandridge filed an amended complaint, which asserts disability-discrimination, failure-to-accommodate, and retaliation claims under both the ADA and Chapter 21 of the Texas Labor Code. Doc. 5, Am. Compl., ¶¶ 31–50.[2]

PMG filed a motion for summary judgment on all claims against it. The motion is ripe for review, so the Court considers it below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

---

[2] Dandridge's failure-to-accommodate claim does not mention the Texas Labor Code. *See* Doc. 5, Am. Compl., ¶¶ 38–44. Nevertheless, the Court assumes, like the parties, that Dandridge alleges failure to accommodate under Texas law. *See, e.g.*, Doc. 30, Def.'s Mot. Br., 2; Doc. 36, Pl.'s Resp. Br., 3.

(quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quotation marks omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary[-]judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated) (quotations marks omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Below, the Court begins by examining PMG's arguments that Dandridge's claims are time-barred. First, the Court rejects PMG's suggestion that Dandridge's ADA claims are untimely due to her failure to allege them within ninety days of receiving the right to sue. Nevertheless, as explained below, Dandridge cannot rely upon allegations of events occurring before July 6, 2018, to

sustain her ADA claims, and she cannot rely upon allegations of events occurring before November 3, 2018, to support her Chapter 21 claims. Such events are time-barred.

Turning to the merits of Dandridge's claims, she has not created a genuine issue of material fact on her disability-discrimination or retaliation claims. First, she abandoned these claims by failing to address them in her response. Second, even assuming she established a *prima facie* case for each claim, she has wholly failed to challenge PMG's nondiscriminatory reasons for its actions.

As for Dandridge's failure-to-accommodate claims, she lacks any evidence of a timely work-from-home request, so any claim premised on such a request fails. Further, Dandridge abandoned the claims that were based on her request for the reassignment of properties by failing to address these claims in her response brief. But there is a genuine issue of material fact as to whether PMG's failure to install handicap features for its office doors constitutes a failure to reasonably accommodate Dandridge.

As a result, the Court grants summary judgment in favor of PMG on all claims except Dandridge's failure-to-accommodate claims premised upon her request for handicap-accessible doors.

A.    *The Timeliness of Dandridge's Claims*

1.    <u>Dandridge's ADA claims are not barred based on a failure to allege them within ninety days of receiving her right to sue.</u>

As a preliminary matter, the Court addresses PMG's argument that Dandridge's ADA claims are time-barred based on her failure to allege the claims within ninety days of receiving her right-to-sue notice. *See* Doc. 30, Def.'s Mot. Br., 17. The ADA requires claimants to file a civil action alleging ADA claims within ninety days of receiving their right to sue. *Wright v. Arlington Indep. Sch. Dist.*, 834 F. App'x 897, 901 (5th Cir. 2020) (per curiam) (citing, *inter alia*, 42 U.S.C. § 12117(a)).

PMG offers evidence (and Dandridge fails to contest) that Dandridge received her right-to-sue notice on May 2, 2019. *See* Doc. 30, Def.'s Mot. Br., 17; Doc. 36, Pl.'s Resp. Br., 2–3; *see also* Doc. 31-1, Def.'s App., 60–61; Doc. 31-17, Def.'s App., 206; Doc. 31-18, Def.'s App., 209; Doc. 31-19, Def.'s App., 212. Accordingly, Dandridge was required to bring her ADA claims on or before July 31, 2019.

The parties dispute whether Dandridge did so. PMG contends that Dandridge did not allege her live ADA claims until September 26, 2019—the date she filed her amended complaint in federal court. *See* Doc. 30, Def.'s Mot. Br., 17. Dandridge, on the other hand, argues that because PMG removed this case from state court on the basis of a federal question posed by Dandridge's ADA claims, PMG cannot now deny that Dandridge's original state-court petition raised ADA claims. Doc. 36, Pl.'s Resp. Br., 2–3.

The Court holds that Dandridge timely alleged her ADA claims. On July 17, 2019, Dandridge filed her state-court petition, which alleged that PMG's "office building did not meet ADA standards" and that Dandridge had requested, but not received, "ADA accommodations." Doc. 1-1, Ex. 2 (Pet.), 3–4. The petition also alleged that the actions of PMG were "in direct conflict with ADA regulations." *Id.* at 6. Thus, although Dandridge explicitly invoked Texas statutes rather than ADA provisions to support her claims, *see, e.g., id.* at 6–7, PMG had notice of allegations of ADA violations. Further, her allegations provide sufficient notice that she alleged claims sounding in discrimination, retaliation, and failure to accommodate. *See id.* Indeed, PMG's notice of removal states that Dandridge "generally refer[red] to the 'ADA' throughout her Petition regarding her disability discrimination, failure to accommodate, and retaliation claims," and insofar as Dandridge brought these three claims under the ADA, removal was proper. Doc. 1, Notice of Removal, 2 n.1.

Accordingly, the Court rejects PMG's argument that "Dandridge did not . . . file her lawsuit under the ADA" in state court. *See* Doc. 30, Def.'s Mot. Br., 17.

Regardless of whether Dandridge alleged ADA claims in her original petition, however, Dandridge's amended complaint relates back to her original petition. After removal, on September 26, 2019, Dandridge filed an amended complaint alleging disability discrimination under the ADA and Texas Labor Code; failure to accommodate without reference to a statute; and retaliation under the ADA and Texas Labor Code. Doc. 5, Am. Compl., ¶¶ 31–50. Under the relation-back doctrine, an "amendment assert[ing] a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading" "relates back to the date of the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Numerous federal courts have applied the relation-back doctrine to federal discrimination claims asserted past the ninety-day filing window but sufficiently related to the plaintiff's timely claims. *See, e.g.*, *Aforigho v. Tape Prods. Co.*, 334 F.R.D. 86, 94 (S.D. Tex. 2020); *Cornett v. United Airlines, Inc.*, 2019 WL 5725050, at *5 (W.D. Tex. Nov. 5, 2019), *R. & R. adopted*, Order at 1, ECF No. 39, No. 1:18-cv-0698-LY (W.D. Tex. Nov. 20, 2019). The Court does the same here, because Dandridge's ADA claims in her amended complaint clearly arise out of the same events giving rise to the claims in her original complaint. *Compare* Doc. 5, Am. Compl., ¶¶ 7–30, *with* Doc. 1-1, Ex. 2 (Pet.), 2–6. Thus, Dandridge's ADA claims are not time-barred based on the ninety-day filing requirement.

2.   Because Dandridge filed her charge of discrimination on May 2, 2019, only factual allegations arising on or after July 6, 2018, can sustain her ADA claims.

Dandridge filed her charge of discrimination with the EEOC on May 2, 2019. Doc. 31-17, Def.'s App., 207. Such a charge must be brought within 300 days of any alleged discriminatory acts.

42 U.S.C. § 2000e-5(e)(1); *see EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753 n.3 (5th Cir. 2020) (per curiam) ("[T]he ADA incorporates Title VII's enforcement procedures." (citation omitted)).[3] Consequently, "only incidents that took place within the timely filing period are actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).[4] Here, as Dandridge appears to concede, *see generally* Doc. 36, Pl.'s Resp. Br., 2, only alleged events occurring on or after July 6, 2018, are actionable.

**3.** **Similarly, for her Chapter 21 claims, Dandridge must rely upon acts occurring on or after November 3, 2018.**

The Texas Workforce Commission requires a claimant to file a charge of discrimination "within 180 days of the alleged discriminatory act" or "alleged retaliatory act." *Marquis v. Omniguide, Inc.*, 714 F. Supp. 2d 640, 644 (N.D. Tex. 2010) (citations omitted); *Pequeno v. Univ. of Tex. at Brownsville*, 718 F. App'x 237, 242 (5th Cir. 2018) (per curiam) (citing, *inter alia*, Tex. Labor Code § 21.202). Thus, Dandridge's state-law claims premised upon conduct that was not subject to a timely charge fail. *See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Saunders*, 2016 WL 3854231, at *6 (Tex. App.—Dallas July 13, 2016, pet. denied) (holding the court lacked jurisdiction over a Chapter 21 disability-discrimination claim where the plaintiff failed to file a charge with respect to the complained-of conduct within 180 days); *Clark v. Champion Nat'l Sec., Inc.*, 2018 WL 10582163, at *3 (N.D. Tex. Nov. 14, 2018) (dismissing all Chapter 21 claims premised on conduct occurring more

---

[3] Under § 2000e-5(e)(1), there is both a 300-day and 180-day limitation, and the former applies only when a claimant initially files her charge of discrimination with a state agency. The parties agree that the 300-day window applies here. *See* Doc. 30, Def.'s Mot. Br., 15; Doc. 36, Pl.'s Resp. Br., 2.

[4] The Supreme Court has recognized that the "time period for filing a charge is subject to equitable doctrines such as tolling or estoppel," which "are to be applied sparingly." *Morgan*, 536 U.S. at 113 (citations omitted). Dandridge has not raised either doctrine here.

than 180 days before the plaintiff's EEOC charge). Here, then, to the extent Dandridge relies upon conduct occurring before November 3, 2018, to sustain her Chapter 21 claims, these claims fail.

B.    The Merits of Dandridge's Claims[5]

As a preliminary matter, Dandridge has not produced any direct evidence of discrimination or retaliation, so her disability-discrimination and retaliation claims are subject to the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (citations omitted); *see generally* Doc. 36, Pl.'s Resp. Br., 20–21 (failing to dispute application of the burden-shifting framework). Under *McDonnell Douglas*, a plaintiff must first make a *prima facie* case of her claim. *McCoy*, 492 F.3d at 556. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 557. If the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is pretextual. *Id.*

1.    The Court grants summary judgment in favor of PMG on Dandridge's disability-discrimination claims.[6]

As an initial matter, Dandridge does not even mention the disability-based discrimination

---

[5] The Court's disability-discrimination, retaliation, and failure-to-accommodate analysis is the same under Chapter 21 and the ADA. *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 686 n.2 (W.D. Tex. 2019) (citing, *inter alia*, *Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 767 (5th Cir. 2019) (per curiam)).

[6] Based on Dandridge's operative complaint, it appears that her disability-discrimination claim is premised on a lack of reasonable accommodations. *See* Doc. 5, Am. Compl., ¶ 32 (alleging, to support her "disability discrimination" claim, that PMG is liable for failing to provide reasonable accommodations). To the extent Dandridge alleges a lack of reasonable accommodations, the Court addresses these allegations in Section III.B.3. But insofar as Dandridge alleges discrimination on the basis of disability independent of the failure to reasonably accommodate her, the Court examines these allegations here. *See Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 774–77 (5th Cir. 2020) (per curiam) (analyzing failure-to-accommodate and disability-based discrimination claims separately).

claim in her response; rather, she focuses on her failure-to-accommodate claim. *See generally* Doc. 36, Pl.'s Resp. Br., 3–5 (exclusively addressing her failure-to-accommodate claim). Nor does she address PMG's arguments regarding the merits of her disability-discrimination claim. *See* Doc. 30, Def.'s Mot. Br., 24–31 (arguing Dandridge has not established a *prima facie* case of disability-based discrimination); *see* Doc. 36, Pl.'s Resp. Br., 2–5 (addressing only the timeliness of her claims and the merits of her failure-to-accommodate claim). For example, Dandridge fails to contest PMG's assertion that a work-from-home denial is not an "adverse employment decision"—an essential element of an ADA discrimination claim. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (citations omitted); Doc. 30, Def.'s Mot. Br., 26 (citations omitted). Thus, the Court considers Dandridge's disability-discrimination claim abandoned. *See, e.g.*, *Arias v. Wells Fargo Bank, N.A.*, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a . . . summary judgment motion, the claim is deemed abandoned." (citations omitted)).

But even if Dandridge had not abandoned the claim, it fails. A *prima facie* case of disability discrimination requires the plaintiff to show: "(1) [she] is a qualified individual; (2) that [she] has a disability; and (3) that [she] suffered a negative employment action because of the disability." *Austgen*, 815 F. App'x at 777 (citation omitted). As set forth below, PMG has provided nondiscriminatory reasons for taking the alleged negative employment actions at issue. Dandridge, however, has not challenged these reasons. Thus, even assuming Dandridge established a *prima facie* case of disability discrimination, PMG is entitled to summary judgment on her claim.

First, though Dandridge's response brief mentions a request for accommodation to work from home "in January-February 2019," Doc. 36, Pl.'s Resp. Br., 2, Dandridge offers no evidence to

support her suggestion that she made a work-from-home request, or that PMG denied such a request, in 2019. *See, e.g.*, Doc. 35-2, Pl.'s App., 1 (discussing her 2018 work-from-home request); Doc. 31-1, Def.'s App., 26–27 (referring to the denial of a work-from-home request in 2018); Doc. 31-21, Def.'s App., 227 (indicating that Dandridge found out her request was denied on or around May 2, 2018). Thus, Dandridge lacks any evidence to support this alleged 2019 negative employment action.

Next, Dandridge's deposition refers to a "January/February 2019" incident in which she was "demot[ed.]" *See* Doc. 35-2, Pl.'s App., 3.[7] The Court first notes that PMG has presented evidence that Dandridge's alleged demotion in 2019 was a shift in job responsibilities—she would no longer supervise direct reports and would instead manage more HOAs. Doc. 31-20, Def.'s App., 217; Doc. 31-21, Def.'s App., 228–29. Nevertheless, even assuming this change constitutes an adverse employment action, PMG provides evidence that the change was based on Dandridge's shortcomings as a supervisor—not her disability. *See* Doc. 31-20, Def.'s App., 217; Doc. 31-21, Def.'s App., 228–29. Irving explained in her declaration that toward the end of 2018, PMG conducted an investigation regarding complaints about Dandridge. *See* Doc. 31-21, Def.'s App., 228–29. The report of this investigation details numerous complaints from Dandridge's supervisees: one reported that Dandridge "is never available"; another reported that Dandridge asked about "her personal sexual preference"; and another stated Dandridge occasionally "provide[d] incorrect information[.]" *Id.* at 236–37. Thus, PMG has provided ample evidence to demonstrate that the 2019 change in Dandridge's responsibilities was a result of poor performance.

Dandridge, however, has not presented any evidence suggesting that PMG's proffered reasons

---

[7] Dandridge fails to mention this allegation in her operative complaint. *See generally* Doc. 5, Am. Compl.

are pretextual. *See generally* Doc. 35-2, Pl.'s App. Indeed, Dandridge does not even address the allegations of poor performance in her response. *See generally* Doc. 36, Pl.'s Resp. Br.

Finally, PMG admits that it denied Dandridge a pay raise in 2019.[8] *See* Doc. 30, Def.'s Br., 10–11 (citations omitted). Nonetheless, as described above, PMG has provided a nondiscriminatory reason for doing so: Dandridge's poor performance as a manager. And again, Dandridge has not provided any evidence—nor even argued—that her disability actually motivated the denial.

Given that there is no evidence suggesting PMG's reasons for changing Dandridge's responsibilities and denying her pay raise are pretextual,[9] the Court **GRANTS** summary judgment in favor of PMG on the ADA and Chapter 21 disability-discrimination claims. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007) (affirming dismissal of ADA claim subject to *McDonnell Douglas* framework where the plaintiff did "not make any argument regarding [the defendant's] proffered reason or point to any evidence demonstrating that [this] reason [was] pretextual" and the court did not find any such reason or evidence).

2.  The Court grants summary judgment in favor of PMG on Dandridge's retaliation claims.

Dandridge does not create a genuine issue of material fact on her retaliation claims either.

---

[8] Again, Dandridge did not make this allegation in her operative complaint. *See generally* Doc. 5, Am. Compl.

[9] "[I]t is unclear whether the mixed-motive alternative to rebutting a defendant-employer's proffered legitimate reason is still viable in ADA discrimination cases . . . ." *Thomas v. Greystar Mgmt. Servs., L.P.*, 2014 WL 2519165, at *3 n.4 (N.D. Tex. June 4, 2014) (citations omitted); *see Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 371 n.4 (5th Cir. 2016) (per curiam) (declining to resolve this issue). But even if the mixed-motive alternative survives, Dandridge has not provided any evidence to suggest that her disability was a "motivating factor" behind the change in responsibilities or denial in pay raise. *See Clark*, 665 F. App'x at 371 n.4 (concluding that a reasonable jury could not conclude that the plaintiff's disability was a motivating factor "for essentially the same reasons a reasonable jury could not infer that [the employer's] reason was pretext for discrimination").

A *prima facie* case of retaliation requires the plaintiff to show: "(1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Lyons*, 964 F.3d at 304 (citation omitted).

Much like the disability-based discrimination claims, Dandridge fails to address the merits of her retaliation claims in her response. *See generally* Doc. 36, Pl.'s Resp. Br. Thus, the Court considers the retaliation claims abandoned. *See Arias*, 2019 WL 2770160, at *2 (citations omitted).

But even if Dandridge had not abandoned her retaliation claims, they fail. Specifically, even assuming that Dandridge's pleadings establish a *prima facie* case of retaliation based on her alleged demotion or denial of a raise, the burden would shift to PMG "to put forth a legitimate, non-discriminatory reason for its actions." *Lyons*, 964 F.3d at 306 (citations omitted). As detailed already, PMG has clearly done so: it received multiple complaints from those Dandridge supervised about her management skills and professionalism. *See supra* Section III.B.1. Accordingly, Dandridge has the burden of demonstrating that these reasons for changing her responsibilities and declining her a pay raise were pretextual. *See Lyons*, 964 F.3d at 306. Put differently, Dandridge "had to offer some evidence from which a jury could infer that retaliation was the real motive" for PMG's decisions. *See id.*

Dandridge has not met this burden, as she offers no argument or evidence in response suggesting PMG's proffered explanation is pretextual. *See generally* Doc. 36, Pl.'s Resp. Br. And the Court finds nothing in the record to suggest pretext.[10] The Court thus **GRANTS** summary judgment

_____

[10] "As with ADA discrimination claims, it is unclear in the Fifth Circuit whether the mixed-motive alternative is available in ADA retaliation claims . . . ." *Bennett v. Dall. Indep. Sch. Dist.*, 936 F. Supp. 2d 767,

in favor of PMG on Dandridge's retaliation claims under the ADA and Chapter 21. *See Jenkins*, 487 F.3d at 317.

### 3. With respect to Dandridge's failure-to-accommodate claims, the Court grants in part and denies in part PMG's motion for summary judgment.

To prove failure to accommodate under the ADA, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Just., Off. Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). PMG asserts that Dandridge fails to satisfy the third element—the failure to make a reasonable accommodation. Doc. 30, Def.'s Mot. Br., 18.[11] "A plaintiff bears the burden of proving the reasonableness of an accommodation in [her] *prima facie* case. Whether a proposed accommodation is reasonable is generally a fact issue." *Jones v. Lubbock Cnty. Hosp. Dist.*, 834 F. App'x 923, 926 (5th Cir. 2020) (per curiam) (citations omitted). Below, the Court analyzes each of Dandridge's factual allegations underlying her failure-to-accommodate claims.

#### a. Dandridge does not raise a genuine issue of material fact on her failure-to-accommodate claims based on her work-from-home request.

As noted above, Dandridge has not provided any evidence substantiating her assertion that she made a work-from-home request "in [the] January-February 2019 timeframe[.]" Doc. 36, Pl.'s Resp. Br., 2. The portions of Dandridge's deposition attached to her response do not substantiate

---

782 n.12 (N.D. Tex. 2013) (citations omitted); *see, e.g.*, *Lyons*, 964 F.3d at 304 (only applying the pretext standard). But again, even assuming the mixed-motives alternative exists here, Dandridge has not offered any evidence that retaliation was a motivating factor behind PMG's decisions.

[11] Because PMG does not move for summary judgment based on the first or second elements, the Court declines to analyze them here.

such an assertion—rather, the deposition states she "was denied to work from home" in 2018 and that she "was told no" and "to fill out the family medical leave" when she asked to work from home. Doc. 35-2, Pl.'s App., 1, 3. Further, PMG has provided uncontested evidence that Irving met with Dandridge on May 2, 2018, and discussed "that her request to work from home was denied[.]" Doc. 31-21, Def.'s App., 227. This May 2, 2018, denial cannot sustain Dandridge's claim now, because she did not file her discrimination charge within 300 days of it. *See Chastain v. United Parcel Serv., Inc.*, 2013 WL 3476132, at *1 (N.D. Tex. July 10, 2013). Given that Dandridge has provided no evidence of a work-from-home request or denial after May 2018, her failure-to-accommodate claims premised upon PMG's refusal to let her work from home are time-barred.

        b.      *Dandridge abandoned her failure-to-accommodate claims premised on her request for the reassignment of certain HOAs.*

     With respect to PMG's reassignment of properties, PMG offers uncontested evidence that it reassigned Parkside by April 2018 and Coombs Bridge by May 2018. *See* Doc. 31-22, Def.'s App., 259–60. Thus, any ADA or Chapter 21 failure-to-accommodate claims premised upon the failure to reassign these properties earlier are time-barred. *See generally supra* Section III.A. Further, the parties agree that PMG reassigned—at the least—the inspections of Imperial House in May 2018. *See* Doc. 5, Am. Compl., ¶ 28; Doc. 31-1, Def.'s App., 54–55. Accordingly, Dandridge's claim based on the reassignment of Imperial House might be barred, too.

     Regardless of the scope and timing of these reassignments, however, Dandridge abandoned her failure-to-accommodate claims premised upon the reassignment of the HOAs by failing to address the merits of these claims in her response brief. *See generally* Doc. 36, Pl.'s Resp. Br. Thus, the Court **GRANTS** summary judgment in favor of PMG on Dandridge's failure-to-accommodate

claims premised upon her request to reassign Parkside, Coombs Bridge, and Imperial House.

        *c.*     *There is a genuine issue of material fact regarding whether PMG failed to reasonably accommodate Dandridge by failing to modify its office doors for handicap accessibility.*

Dandridge alleges that PMG is liable under the ADA for failing to accommodate her requested modifications to the PMG office. *See* Doc. 5, Am. Compl., ¶ 42; Doc. 36, Pl.'s Resp., 5. Specifically, Dandridge states in her deposition that she used her motorized chair when she had lupus flares, and she struggled to navigate the office in her chair because the office doors lack handicap buttons. Doc. 31-1, Def.'s App., 23–24. She states that when using her chair, "[p]eople would have to help [her] go to the bathroom. They'd have to help [her] get in and out of the doors." *Id.* at 25. Further, she testifies that she made numerous verbal requests for handicap-accessible doors. *Id.* Indeed, in Irving's declaration, she relays that on March 5, 2018, Dandridge "reported that she came into work on her motorized chair and her co-workers had to help her open doors in the office building." Doc. 31-21, Def.'s App., 224. More importantly, there is documentation of a request for door accessibility in the summary-judgment record: on May 2, 2018, Dandridge sent an email to the Human Resources Department stating:

> I have a motorized chair that aids me when I'm having difficulties walking. The issue that I have with this is the office building does not follow ADA regulations. This building (the six floor) does not have handicap accessibility (meaning if there was a fire and I was in my motorized chair I would be stuck inside the building if no one assisted me). My doctor and I have requested the following[:] during my flares, I'm able to work from home *or the company make the modification necessary to the office and bathroom doors for me to continue to do my job.*

Doc. 31-16, Def.'s App., 205 (emphasis added). Further, Dandridge's April 10, 2018, ADA Functional Limitations Form completed by her treating physician states that Dandridge's lupus flares can "cause difficulty with walking and standing[.]" Doc. 32-1, Def.'s App., 302.

PMG contests the viability of Dandridge's failure-to-accommodate claim premised on the failure to install handicap buttons (or otherwise modify the doorways) on two grounds.

First, PMG suggests that because Dandridge "was able to perform the essential functions of her job without the accommodation of building modifications," PMG was not required to make the accommodation. Doc. 30, Def.'s Mot. Br., 23 (citations omitted). But a "reasonable accommodation" may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities[.]" 42 U.S.C. § 12111(9)(A). Indeed, the Fifth Circuit has clarified that "reasonable accommodations are not restricted to modifications that enable performance of essential job functions." *Feist*, 730 F.3d 450, 453.

Likewise, in *Burnett v. Ocean Properties, Ltd.*, the First Circuit recently explained, "[t]he fact that [the employee] was able to enter the [workplace] . . . and to perform [his] duties . . . once inside does not necessarily mean that he did not require an accommodation or that his requested accommodation was unreasonable[.]" 987 F.3d 57, 69 (1st Cir. 2021). As a result, the First Circuit rejected an employer's argument that because its employee was "actually performing" his duties and "excelling at his job[,] he did not need an accommodation . . . ." *Id.* at 68–69.

The Court similarly rejects PMG's argument and holds that Dandridge's ability to continue working despite the lack of handicap-accessible doors does not, as a matter of law, absolve PMG of any obligation to make the accommodation.

Second, PMG points out that Dandridge's medical documentation fails to indicate that she needed modifications to the office building. Doc. 30, Def.'s Mot., Br., 23–24. But PMG has not cited any binding authority indicating that an accommodation is only reasonable when explicitly recommended by a medical provider. Here, Dandridge's medical provider indicated that her lupus

flares caused her to experience trouble walking and required her "to use [a] motorized cart with flares[.]" Doc. 32-1, Def.'s App., 303. These statements, particularly alongside Dandridge's email requesting accessible doors, create a genuine issue of material fact as to whether Dandridge's request was reasonable. *See, e.g., McGregor v. United Healthcare Servs., Inc.*, 2010 WL 3082293, at *9–10 (S.D. Tex. Aug. 6, 2010) (denying summary judgment to employer on failure-to-accommodate claim where employee requested accessible facilities and employer claimed it had no duty to make the requested accommodations in part due to the employee's failure to provide medical proof substantiating the necessity of the accommodations); *cf. Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224–25 (5th Cir. 2011) (concluding "no reasonable jury could find that [the employer] failed to reasonably accommodate" the employee's diabetes diagnosis where employee requested to "work only daytime hours" but his doctors only "suggested that a daytime shift would be preferable," and one doctor stated that the employee "was not substantially limited in the ability to perform any major life activity").

Overall, neither of PMG's arguments entitle PMG to judgment as a matter of law on Dandridge's failure-to-accommodate claims based on handicap accessibility. Rather, PMG's dispute as to the reasonableness of modifications to the office doors is a question "for the trier of fact." *Jones*, 834 F. App'x at 926–27 (citations and quotation marks omitted). Thus, the Court **DENIES** PMG's summary-judgment motion as to the ADA and Texas Labor Code failure-to-accommodate claims premised on PMG's failure to modify its doors for handicap accessibility.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** PMG's

motion (Doc. 29): The Court denies summary judgment on Dandridge's failure-to-accommodate claims premised on the lack of handicap-accessible doors in PMG's office but grants PMG summary judgment on all other claims.

SO ORDERED.

SIGNED: April 29, 2021.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE